IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GARRY CROWDER and JILL EVANS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. CV 99-TMP-1261-S |
| ) | |
| MARTY BYROM, Individually; ) | |
| MARTY BYROM d/b/a/ MARTY ) | |
| BYROM CORPORATION, LLC.; ) | |
| DRYVIT SYSTEMS, INC.; ) | |
| APACHE PRODUCTS; and TROY ) | |
| DILLARD, d/b/a DILLARD ) | **ENTERED** |
| PLASTERING CO., ) | |
| ) | MAR 1 4 2003 |
| Defendants. ) | |

MEMORANDUM OPINION

The court has before it the motion for summary judgment filed by defendant Troy Dillard, d/b/a Dillard Plastering Co., ("hereinafter "Dillard"), on October 15, 2002. The motion has been fully briefed by the parties and is ripe for consideration by the court.

I. Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Celotex</u>, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." <u>Id</u>. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id</u>. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. <u>Celotex</u>, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. Undisputed Facts for Summary Judgment Purposes

Applying the above standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the non-moving plaintiffs.

In 1994, Byrom began construction of a house at 5015 Castle Rock Road in the Greystone subdivision of Shelby County, Alabama. The house was clad with synthetic stucco, called an

exterior insulated finishing system ("EIFS"), manufactured by Dryvit Systems, Inc., and distributed by Apache Products, Inc. Byrom subcontracted the installation of the EIFS to Troy Dillard, doing business as Dillard Plastering ("Dillard"). Apparently, there was no written contract between Dillard and Byrom for the EIFS installation work. Dillard is certified by Dryvit to install EIFS, signifying that he has undergone special training in the process. Dillard had installed Dryvit EIFS on several other homes in the Greystone development. Plaintiffs never contacted Dillard with any complaints they had about the house or the EIFS siding. Dillard was added to this action by amendment of the complaint on July 22, 1999, although he was not served with process until well into 2001.

During all phases of the construction, Byrom had a construction superintendent present at the job site; Marty Byrom himself also visited the construction as often as four or five times a week. In February 1995, Crowder saw the house while it was still under construction, and he was informed by Byrom that it would be clad in EIFS. When Crowder stated that he knew little about EIFS, Byrom told him it was a good quality siding. On March 6, 1995, Byrom entered into a home sales contract to sell the finished house to plaintiffs. The sale was closed on May 30, 1995. Prior to the closing, the plaintiffs had the house inspected by an independent inspector, who reported that problems had been encountered with installation of EIFS at other sites and that improper installation could result in damage to the underlying structure of the house. Nonetheless, the inspector reported that the surface of the EIFS appeared "serviceable" (the inspector's highest rating), but that no assurances could be given that it was correctly installed.[1]

---

[1] It is worth noting the implications of this inspection report, written long before anyone anticipated litigation over this house. One may infer from the fact that an inspector looked at the house and, specifically, the EIFS, but could not state whether the EIFS was properly installed, that a mere visual inspection of an EIFS-clad house is not capable of revealing problems with the installation. This implicates both Byrom's spoliation argument and plaintiffs' fraud theories, and

4

About a year later, on May 16, 1996, plaintiffs sent Byrom a letter complaining about a number of problems they were experiencing with the house. It appears to be undisputed, however, that none of these problems (discoloration of a facade, peeling paint, and a leak around a fireplace) were related to the EIFS or its installation. The problems were repaired to plaintiffs' satisfaction. In the fall of 1996, Byrom attended a National Association of Home Builders meeting in Orlando, where problems with EIFS were discussed. In October 1996, he wrote the plaintiffs a letter, informing them that he was part of a task force investigating problems with EIFS in humid climates. He offered to inspect their EIFS, which they accepted. Byrom came to the house one day when neither plaintiff was home. He inspected the house and found and caulked several cracks between windows and doors and the EIFS siding. Byrom later reported to the plaintiffs that the siding had been properly installed and that he found no sealant deficiencies; he did not tell them that he found cracks and caulked them.

In the spring of 1998, Byrom again inspected plaintiffs' home with a real estate agent hired by the plaintiffs to sell the house. The agent expressed concern about marketing an EIFS-clad home, and she pointed out a number of things she perceived as problems with the installation of the EIFS on plaintiffs' house. Byrom again assured the agent and the plaintiffs that the EIFS was properly installed.

By May of 1999, plaintiffs had discovered rot damage to the underlying structure of the house. Their attorney wrote a letter to Byrom, explaining the problems and offering to settle the matter prior to suit. Suit was filed about two weeks later, on May 18, 1999. Between May 1999 and August 1999, experts representing Apache, Dryvit, and Dillard all visited the plaintiffs' house to

---

underscores the importance of the negligent failure to warn and negligent supervision theories.

make inspections they thought appropriate. A party planning meeting in this litigation was held in July 1999, but Byrom expressed no desire to inspect the house. No one for Byrom arranged to inspect the house. In early August 1999, plaintiffs' counsel informed counsel for Byrom that repairs would soon begin on the house, including the stripping of the EIFS siding and replacing it with brick cladding. Byrom first expressed a desire to inspect the house on August 5, 1999. That same day plaintiffs' counsel offered to make the house available for inspection by Byrom's expert during the first week in August. Byrom's expert has testified by affidavit that, because he was not able to inspect the house before the EIFS was stripped, he was unable to determine if the damage was due to improper installation of the EIFS.

### III.  Contract/Warranty Claims

Counts One and Two of the First Amended Complaint allege claims for breach of express warranty and breach of implied warranty. Although plaintiffs assert that they will attempt to prove breach of contract and breach of implied warranty of habitability claims at trial, their response to Dillard's motion for summary judgment addresses neither of these claims nor attempts to rebut Dillard's contention that no contract existed between them. Certainly a fundamental part of any breach of contract claim is the existence of a contract between the parties seeking to enforce it. No such contract existed here. The plaintiffs' entered into a contract to purchase the finished home from the general contractor, Marty Byrom d/b/a M. Byrom Corporation. Byrom hired Dillard as a subcontractor to install the EIFS siding, but Dillard had no privity of contract with the plaintiffs. Dillard's only contractual duties ran to Byrom, the general contractor, as Dillard had no direct contract with the plaintiffs; indeed, no contract existed even between Byrom and the plaintiffs until

after the house was completed and Dillard had finished his work. Keck v. Dryvit Systems, Inc., 830 So.2d 1 (Ala. 2002).

The implied warranty of habitability first recognized in Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971), also is dependent upon the existence of privity of contract. To date the Alabama Supreme Court has said that the implied warranty of habitability is implied in the contract for sale between the vendor-seller and the first purchaser of a new house. Id.; see also Capra v. Smith, 372 So.2d 321 (Ala. 1979). No cases have extended the implied warranty to persons not parties to the first original contract for sale of a house. Indeed, the court has been very clear that sales of "used" houses carry no implied warranty because no privity existed between the subsequent purchasers and the original builder. See Boackle v. Bedwell Construction Co., Inc., 770 So.2d 1076 (Ala. 2000).

The requirement of privity precludes such a claim here against the subcontractor with whom the original purchasers had no contract. Regardless of whether the plaintiffs have a warranty claim against the builder, Byrom, they have no implied warranty claim against the builder's subcontractor. Of course, the court expresses no opinion whether Byrom, the builder, has any claim against Dillard based on the contract between the two of them. Dillard's motion for summary judgment with respect to plaintiffs' implied warranty and contract claims, however, is due to be granted.

## IV. Negligence Claims

Counts Three, Four, Five, and Six of the First Amended Complaint state claims grounded in negligence. Count Three alleges a negligent failure to warn of the potential defects in EIFS siding. Count Four contends that the EIFS siding was negligently designed. Count Five alleges negligent installation of the siding, and Count Six alleges negligent supervision of the installation of the siding.

Dillard has moved for summary judgment on all of these claims. In response to the motion for summary judgment, plaintiffs contend that they can proceed to trial on the negligent installation and negligent failure-to-warn claims. Consequently, the court deems the negligent design and negligent supervision claims to be abandoned with respect to defendant Dillard, and that Dillard is entitled to summary judgment on these two claims.

 A. Statute of Limitation— Dillard's first line of defense on these claims is the contention that they are barred by Alabama's two-year statute of limitation for negligence actions. Alabama Code § 6-2-38(l) (1975). Plaintiffs responded to this contention by asserting that their first discovery of damage caused by EIFS occurred in April 1999, not 1996. The court is not persuaded that Dillard has carried his burden of establishing his entitlement to judgment as a matter of law on this affirmative defense.

 The issue is, when did the damage caused by the EIFS manifest itself. A cause of action for negligence accrues when the damage or injury occurs, not when the wrongful act occurred. Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, 674 So. 2d 1287 (Ala. 1995); Matthews Brothers Construction Co., Inc. v. Stonebrook,, 2001 WL 1637484 (Ala.Civ.App. 2001). In the special case of damage to land or buildings appurtenant to it, the cause of action accrues upon discovery of the first damage. Rumford v. Valley Pest Control, Inc., 629 So.2d 623 (Ala. 1993). The burden of establishing the absence of a genuine issue of fact with respect to the affirmative defense rests on the defendant.

 Dillard argues that in May 1996, plaintiffs reported to Byrom various problems with the house, including discoloration of a facade. Consequently, Dillard argues, the damage manifested itself as early as May 1996, and that suit filed after May 1998 was untimely. This overlooks,

8

however, Byrom's deposition testimony that the discoloration of the facade was caused by improperly sealed tiles and was completely unrelated to the EIFS siding. See Byrom Deposition, pp. 263-265 and 283-289. Certainly a genuine issue of material fact exists about when the damage caused by the EIFS first occurred and the cause of action accrued. Because of this fact issue, Dillard is not entitled to summary judgment, but is entitled to present evidence and argue to the jury that the claims are barred by the limitation.

      B. Negligent Failure to Warn—In addition to the statute-of-limitation argument considered above, Dillard also contends that plaintiffs cannot state a claim against him for negligent failure to warn because Alabama courts have conclusively determined that EIFS is not a "product," Keck v. Dryvit Systems, Inc., 830 So.2d 1 (Ala. 2002), and that a failure-to-warn theory is limited to products liability actions. Although plaintiffs concede that EIFS is not a product, they assert that the duty to warn extends beyond products liability theories to common-law negligence actions.

      First, it must be remembered that this is not a personal injury action. Neither of the plaintiffs claim to have suffered any personal injury as a result of the installation of EIFS siding and, thus, most of the cases cited by plaintiff for the proposition that there exists a duty to warn are inapposite. Further, since no contractual relationship existed between Dillard and the plaintiffs, the duty to warn, if one exists, arises by operation of law, not contract. The court is persuaded, however, that a subcontractor, having no direct contractual relationship with the purchaser, has no duty to warn the purchaser of potential defects in a house or the components used to build the house. To hold that such a duty exists imposes on *all* of the subcontractors involved in the building of a house the duty to communicate directly to the house purchaser any potential problems that might crop up in the work performed by the subcontractors. Roofers would be required to warn of the possibility of leaks;

plumbers would be required to warn the owner that the water heater might explode; electricians would be required to warn about the possibility of short-circuits and fires. In short, all of the various types of subcontractors brought in to build a house – carpenters, foundation builders, landscapers, plumbers, electricians, roofers, cabinet-makers, flooring installers – all must directly communicate warnings to the homeowner (not just the general contractor) about any possible defects or problems that might occur with the house. This simply is not required by the law.

      The facts of this case illustrate why subcontractors have no duty to warn the home purchaser of potential defects in materials or workmanship. Here, Dillard was hired by Byrom to install the EIFS well before the plaintiffs entered into a contract to buy the house. Although plaintiffs looked at the house before the siding was installed, there is no evidence that they signed the contract prior to the completion of the EIFS installation. In any event, how is a subcontractor supposed to know *who* (other than the builder) to warn? Many subcontractors finish their work and leave the job site long before it is known who will buy the house. To impose a duty on subcontractors to warn home buyers about potential problems means that subcontractors must continue to monitor every job they perform to determine who the ultimate purchaser might be and to warn the purchaser *before* the purchaser enters into a contract to buy the house. Subcontractors would be effectively required to warn every potential purchaser, every person who looks at a new house for sale. Where there is no direct privity of contract between the subcontractor and the purchaser, there is no duty on the part of the subcontractor to attempt to warn the purchaser about potential defects in materials or the workmanship of the subcontractor. Absent privity, it is not foreseeable to the subcontractor that a particular person may be damaged by such defects because the subcontractor cannot know who the

ultimate purchaser of the house may or will be. Dillard is entitled to summary judgment on this claim.[2]

### V. Fraud Claims

Count Seven of the First Amended Complaint alleges a claim for fraudulent suppression and concealment. Count Eight avers a claim for fraud and misrepresentation. In response to Dillard's motion for summary judgment on these claims, plaintiffs concede that he is entitled to judgment on the claim for fraud and misrepresentation,[3] but contend that their fraudulent suppression and concealment claim can proceed to trial. The court will deem the claim in Count Eight to be abandoned by plaintiffs and that defendant Dillard is entitled to judgment on this claim.

Fraudulent suppression exists only when a duty to disclose a material fact exists. The Alabama Supreme Court has said:

> In order to succeed on a fraudulent-suppression claim, the plaintiff must prove: (1) that the defendant suppressed a material fact; (2) that the defendant had had [sic] a duty to communicate that fact, arising from a confidential relationship or from the circumstances of the case; and (3) that the plaintiff was damaged as a result of the suppression. Ex parte Dial Kennels of Alabama, Inc., 771 So. 2d 419 (Ala. 1999). The question at issue in this case revolves around the second element of fraudulent suppression-- specifically, it is whether the Bank had a duty to disclose to Cole the termite damage indicated by Copter Pest Control's report. The existence of a duty is a question of law to be determined by the trial court. State Farm Fire & Cas. Co. v.

---

[2] To be clear, Dillard is entitled to summary judgment as to the negligent failure-to-warn claim, but not as to the negligent installation claim. Additionally, the plaintiffs' negligent supervision and negligent design claims are deemed abandoned by plaintiffs with respect to Dillard, and, hence, he is entitled to summary judgment on those claims as well.

[3] Plaintiffs admit that they cannot prove the essential element of a representation being made to them by Dillard. It is undisputed that Dillard and plaintiffs never had any direct dealings or communications and, thus, plaintiffs could not prove that Dillard ever actively misrepresented anything about the EIFS siding.

Owen, 729 So. 2d 834 (Ala. 1999). A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case. Ala.Code 1975, § 6-5-102; Ex parte Ford Motor Credit Co., 717 So. 2d 781, 785 (Ala. 1997).

Ex parte Farmers Exchange Bank, 783 So. 2d 24, 27 (Ala. 2000). Whether "particular circumstances" creates a duty to disclose depends upon a number of factors. "Factors a court is to consider in determining whether a defendant had a duty to disclose include: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact alleged to have been suppressed; (4) the plaintiff's opportunity to ascertain that fact; (5) the customs of the particular trade; and (6) other relevant circumstances." Ex parte Walden, 785 So. 2d 335, 339 (Ala. 2000)(citing State Farm Fire & Casualty Co. v. Owen, 729 So. 2d 834 (Ala. 1998)); see also Ex parte Life Insurance Co. of Georgia, 810 So. 2d 744 (Ala. 2001).

    Weighing these factors in light of the facts of this case, the court is persuaded that Dillard had no duty to disclose to plaintiffs the need to caulk or maintain EIFS siding to prevent damage to the structure of the house. First, there was no relationship between Dillard and plaintiffs; plaintiffs admit that they did not even know of the existence of Dillard until several years after buying the house. Certainly Dillard had superior knowledge about the installation and limitations of EIFS and the facts relating to the need to caulk and properly install EIFS were valuable to anyone considering buying an EIFS-clad structure. The plaintiffs had a somewhat limited opportunity to discover the facts relating to EIFS. They made certain inquiries from Byrom, the builder of the house, and they had time to research EIFS and its reliability before entering into a contract to buy the house. Nonetheless, they did not have the opportunity to gain the same level of information that Dillard possessed. Finally, the customs of the trade do not usually involve subcontractors disclosing to

house buyers potential problems in material components used to build a house. For all of the reasons discussed above in relation to the duty to warn, it is impractical to impose such a duty on subcontractors who often never know who the home purchaser is.

Dillard had no duty to make any disclosure to plaintiffs about the installation of the Dryvit siding. Plaintiff never communicated with Dillard; they never requested any information from him. It is not clear that Dillard even knew that the plaintiffs were the people who contracted to buy the house. Under these circumstances, no duty to disclose arose and, absent that duty, no fraudulent suppression occurred. Dillard is entitled to summary judgment on this claim.

### VI. Conclusion

Based on the foregoing considerations, the court finds that Dillard is entitled to summary judgment with respect to all claims asserted by plaintiffs except for plaintiffs' claim for negligent installation. By separate order, the court will grant Dillard's motion as to all claims except the negligent installation claims, as to which the motion will be denied.

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this the 14th day of March, 2003.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE